IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                        No. 1:20-cr-82-WJ

HASSAN ALQAHTANI,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR RECONSIDERATION

THIS MATTER comes before the Court upon Defendant's motion for reconsideration or, in the alternative for limiting instructions, filed December 28, 2020 (**Doc. 72**) (the "Motion"). Defendant respectfully moves the Court to reconsider its December 14, 2020 Order granting in part the United States' First Motion *in Limine* to Admit Evidence (the "December 14th Order") (Doc. 64). Alternatively, the Motion requests that the Court issue Defendant's proffered limiting instructions to the jury. The Court finds that the Motion is well-taken to the extent it requests reconsideration of the rulings related to Sierra Shafer's December 12, 2019 statements regarding firearms and firearm ownership and evidence that Defendant abused or controlled Shafer. Accordingly, the Motion is GRANTED IN PART. Moreover, the Court GRANTS IN PART Defendant's request for a limiting instruction on the mental kill list evidence. The Court finds that the remainder of the Motion is not well-taken and is therefore DENIED IN PART.

## Background

Defendant is charged with being an Alien in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(5)(B) and 924. Doc. 14 (Indictment). Defendant is a Saudi Arabian citizen admitted to the United States on a non-immigrant F1 student visa. Doc. 1 ¶ 2

1

(Criminal Complaint). At the time of the investigation, Defendant was attending the University of New Mexico's School of Engineering. *Id*. The Federal Bureau of Investigation (the "FBI") began investigating Defendant after an acquaintance, R.V., submitted a tip to the agency on August 8, 2019. *Id.* ¶ 6. On December 12, 2019, the FBI effected a search warrant on Defendant's home and found a .380 caliber firearm, ammunition, and a box for a .380 firearm. *Id.* ¶¶ 13–14. During the search of the home, Defendant's wife,[1] Sierra Shafer was present and was interviewed by the investigating agents. *Id.* ¶ 15. Initially, Shafer stated that she had never purchased or owned a firearm, but she changed her statement once the firearm was found, telling agents that the firearm was hers. *Id.*

On October 4, 2020 the Government gave notice of the evidence at issue, which includes evidence of a "mental kill list" Defendant allegedly told R.V. about, evidence of possible domestic abuse against Sierra Shafer, and statements about firearms made by Shafer to the FBI during the execution of the search warrant on Defendant's home. Doc. 49. The Court held a hearing on this noticed evidence on December 8, 2020, *see* Doc. 62, and issued its ruling on December 14, 2020. Doc. 64. On December 28, 2020, Defendant moved the Court to reconsider its December 14th Order. The Court held a hearing on the Motion on January 20, 2021. Doc. 81. After hearing oral arguments, the Court asked the parties to submit supplemental briefing on the Confrontation Clause issue raised in the Motion. *See* Docs. 85, 87, and 89.

## Relevant Law

The Federal Rules of Criminal Procedure do not expressly provide for a motion to reconsider. Even so, in the criminal context, courts ordinarily apply the same standards that apply in civil cases. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). The Court has

---

[1] Defense counsel represents that Defendant would often refer Sierra Shafer as his "girlfriend," even though Mr. Alqahtani and Ms. Shafer were, and still are, married.

discretion to reconsider a decision if the moving party can establish (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to reconsider is appropriate where a court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning, but of apprehension. *Id.*; *see also Huff v. UARCO, Inc.*, 925 F.Supp. 550, 561 (N.D. Ill. 1996). A motion to reconsider is not a second opportunity for the losing party to make his strongest case, to rehash arguments or to dress up arguments that previously failed. *See Christy*, 739 F.3d at 539.

## Discussion

### I. The Court will not reconsider its prior rulings on evidence relating to the alleged mental kill list

Defendant argues that the Court should reconsider its prior rulings on the mental kill list evidence because (1) it misapprehended the Government's position on the relevance of this evidence, (2) it misapprehended the facts supporting its rulings, and (3) it misapprehended the law governing the balancing test for admissibility under Fed. R. Evid. 403. Docs. 72 & 78.

First, the Court finds that it did not misapprehend the Government's position. In responding to Defendant's challenge to the noticed evidence, the Government both revealed that R.V. will be testifying live at trial and argued that the probative value of R.V.'s testimony regarding the alleged kill list comes from its ability to explain the charged offense. Doc. 50 at 1–2. The timing of the Government's reply brief did not unduly prejudice Defendant as the December 8th hearing gave defense counsel ample opportunity to prepare and present the Court with a response to the reply brief's more nuanced arguments.

Second, the Court finds that it did not misapprehend the facts in this case. The Criminal Complaint shows that on August 8, 2019, R.V. told the FBI that Defendant was keeping a mental list of people he wanted to kill. Doc. 1 ¶ 6. August 8, 2019 is a date which fits squarely within the Indictment's allegation that Defendant unlawfully possessed a firearm "in and between July 2019 and December 12, 2019." Doc. 14.

Finally, the Court did not, as Defendant contends, fail to consider the factors put forth by the Tenth Circuit in *Seeley v. Chase*, 443 F.3d 1290, 1295 (10th Cir. 2006). At the December 8th hearing, the Court had parties articulate the nature of the kill list evidence, and the forum provided parties a space to present arguments relating to the considerations found in *Seeley*. In turn, the Court incorporated its consideration of the parties' oral arguments into its December 14th Order. More importantly, the Court must make clear that *Seeley*, while a useful opinion, only mandates that a court make such a reasoned, recorded statement of its Fed. R. Evid. 403 decision when it admits evidence of prior sexual misconduct under Rules 413–415. *See Seeley*, 443 F.3d at 1295 (citing *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir.1998) and *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998)).

Defendant cannot meet the *Servants of Paraclete* standard with regard to this category of evidence. Specifically, Defendant has not established the need to correct clear error or prevent manifest injustice. The Court based its ruling on the Government's representation that R.V. will be testifying live at trial about his personal knowledge of the alleged kill list, which seems to be based on R.V.'s interactions with Defendant. Doc. 64 at 4. The Court agrees with defense counsel that this evidence is not admissible if brought in via the testimony of an FBI agent or other witness without personal knowledge. Although the Court will not reconsider its prior ruling on the mental kill list evidence, it will issue a limiting instruction as requested by Defendant. The requested text

4

of this instruction has been altered to reflect the non-hearsay nature of R.V.'s testimony and to expand the proper use of this evidence to include motive.[2]

II. **The Court will, in its discretion, reconsider its prior rulings on the admissibility of Sierra Shafer's statements related to firearms and evidence of Defendant's possible abuse of Shafer**

Sierra Shafer's December 12, 2019 statements[3] to the investigating agents regarding firearms go directly to Defendant's guilt in committing the charged offense and present Confrontation Clause and *Crawford* doctrine issues. In its supplemental brief, the Government conceded that these statements are testimonial and that Defendant has not had a prior opportunity to cross-examine Shafer, an unavailable witness.[4] Doc. 85 at 1. Despite these concessions, the Government argues that the Confrontation Clause does not bar this evidence because the conflicting statements are not being used for their truth. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."). The parties did not raise the Confrontation Clause issue in the initial briefing, but there were ample arguments regarding the hearsay issue. The Court's prior ruling was based on a finding that the statements were being offered "to show that the investigation was properly conducted and the investigating agents explored all avenues when determining who owned the charged firearm," thus rendering them non-hearsay under Fed. R. Evid. 801(c). Doc. 64 at 6. The only issue is whether it would be proper for the Court to keep

---

[2] The Court is not reconsidering its prior ruling on the mental kill list evidence, which includes a finding that the evidence is admissible as a prior act based in part on its ability to "show[] the reason why Defendant may have elected to illegally possess a firearm." Doc. 64 at 4.

[3] The Government provides a detailed description of Shafer's statements in its supplemental brief. *See* Doc. 85 at 2–3.

[4] As of February 2, 2021, the date on which the Government filed its supplemental brief, Sierra Shafer was still in the process of consulting with her counsel to determine whether she will assert her spousal privilege if called to testify at trial. Doc. 85 at 1. For the purposes of this Memorandum Opinion and Order, the Court will assume that Shafer has asserted a valid spousal privilege and is an "unavailable" witness for the purpose of this *Crawford* analysis.

this prior finding intact.

In his supplemental response brief, Defendant cites to *United States v. Cass*, 127 F.3d 1218 (10th Cir. 1997) and *United States v. Hinson*, 585 F.3d 1328 (10th Cir. 2009), opinions in which the Tenth Circuit strongly cautions trial courts against allowing the unfettered use of "non-hearsay" statements that are, in reality, the Government's attempt to evade the limitations of the rule against hearsay. *Cf.* Fed. R. Evid. 802.

During the trial of Sonya Cass, who was charged with falsely reporting to the FBI that she had been kidnapped and sexually assaulted, the government successfully argued that several out-of-court statements were being offered to show the effect they had on the investigation and to show inconsistencies between statements Cass had made over the course of the investigation. *Cass*, 127 F.3d at 1219. This argument relied on *United States v. Freeman*, 816 F.2d 558 (10th Cir. 1987), which the government cited for the proposition that statements offered to explain the course of an investigation are not hearsay. *Id.* at 1222. The government further argued that the defense opened the door by asserting in its opening statement that the FBI failed to conduct a proper kidnapping investigation, and instead conducted an investigation aimed at showing that Cass was lying. *Id.* These out-of-court statements were introduced in conjunction with an abundance of non-hearsay evidence that tended to prove that Cass's statements to the FBI were false *Id.* at 1220.

On appeal, the Tenth Circuit found that the government's use of out-of-court statements was extensive and prejudicial, and that the admission of these statements ultimately ran afoul with *Freeman*'s cautionary language that out-of-court statements offered "to explain the background of an investigation" must be scrutinized under Fed. R. Evid. 401 and Fed. R. Evid. 403 for relevance and to prevent confusion or prejudice on the part of the jury. *Id.* at 1222–23 (quoting *Freeman*, 816 F.2d at 563). The Tenth Circuit noted that the hearsay problem was exacerbated because the

"background" evidence went precisely to the issue the government was required to prove, that Cass lied about being kidnapped. *Id.* at 1223. Moreover, the government had relied on the content of several of the statements to support its opening arguments, and the government's first witness, an FBI agent, used these statements to "outline" the entire prosecution case. *Id.* at 1224. Taken together, the nature and use of these statements "compel[led] the conclusion that the evidence was used for hearsay purposes." *Id.* at 1224.

In *Hinson*, the Tenth Circuit added to *Cass*, holding that:

> Where the government introduces evidence that bears on the ultimate issue in a case but that is not necessary to explain the background of a police investigation, the only reasonable conclusion we can reach is that the evidence was offered, not as background, but as support for the government's case against the defendant.

585 F.3d at 1337. In the instant case, Shafer's conflicting statements regarding firearms fall within the bounds of the Tenth Circuit's warnings in *Cass* and *Hinson*. These statements bear on the ultimate issue of whether Defendant possessed the charged firearm. Further, these statements may not be necessary to show that the FBI conducted a proper investigation or explain why agents discredited Shafer. Defendant has established that a constitutional issue, not raised in the initial briefs, is at play. Based on the law governing this evidence, the Court will, in its discretion, reconsider its prior ruling in order to prevent manifest injustice. *See Servants of Paraclete*, 204 F.3d at 1012.

Having reconsidered its prior ruling, the Court finds that the statements are testimonial hearsay barred by the Sixth Amendment's Confrontation Clause. First, the Court finds that the Government's identification of a relevant non-hearsay use for out-of-court statements is insufficient to justify admission. Under circumstances such as these, the Tenth Circuit instructs the Court to consider the significant prejudice that would result if the jury were to consider the statements for the truth. *Cass*, 127 F.3d at 1223 (citing *United States v. Forrester*, 60 F.3d 52, 59

(2d Cir.1995)). Shafer's statements, at lease to the extent they convey that she did not own, or even know about, the firearm found in Defendant's home, could inject unfair prejudice into this case. Moreover, the Government can use admissible evidence, likely in the form of testimony from R.V. and A.M., to explain why the investigating agents did not believe Shafer's claim that she owned the firearm found. Both tipsters reported to the FBI that Shafer would make this "false" claim, *see* Doc. 1 ¶¶ 7, 9, thus severely diminishing her credibility in the eyes of the investigating agents. The availability of this admissible evidence adds to a finding that Shafer's statements are not proper "background" evidence. *See Hinson*, 585 F.3d at 1336–37 (officer's testimony that she heard someone state that "Kevin" was supplying drugs was hearsay because it was not necessary to explain the background of the investigation in case where another witness had testified that he told law enforcement that Kevin Hinson was his supplier).

Having found that Shafer's statements regarding firearms cannot be used in the Government's case-in-chief, the Court must also reconsider its prior ruling on the evidence related to Defendant's possible abuse of Shafer. Without Shafer's inconsistent statements about firearms coming in to demonstrate a contingency plan or the agents' assessment of Shafer's credibility, this abuse evidence, whether based on the investigating agents' observations or their interactions with Shafer, is largely irrelevant. In turn, its diminished probative value is substantially outweighed by the danger of unfair prejudice. Admission of the evidence of abuse independent of Shafer's statements regarding firearms could lead to the situation contemplated by the Tenth Circuit in *United States v. Tan*, which held that evidence may be unfairly prejudicial if it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." 254 F.3d 1204, 1212 (10th Cir. 2001) (quotation omitted). Given

the real likelihood of this prohibited result being generated by admitting the evidence of abuse, the Court must now preclude this evidence pursuant to Fed. R. Evid. 403.

However, neither the firearm statements nor the abuse evidence are unequivocally precluded from being introduced at trial, as there could be a point in the proceedings where certain defense tactics might justify either category of evidence coming in as rebuttal evidence. *See Cass*, 127 F.3d at 1224 (noting that it might have been proper for the government to introduce some limited out-of-court statements to directly rebut the defendant's trial argument that the FBI improperly shifted the focus of its investigation). The Tenth Circuit has recognized that "otherwise inadmissible" rebuttal evidence may be introduced in certain instances if (a) the inadmissible evidence is "reasonably tailored to the evidence it seeks to refute," and (b) there is "a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut." *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) (citing and quoting *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir.2001)). This criteria is congruent with other circuits' allowance of potentially prejudicial background evidence coming in as rebuttal evidence should the circumstances warrant such a use. *See United States v. Reyes*, 18 F.3d 65, 71 (2d Cir. 1994) (noting that certain defense tactics might justify rebuttal in which the government may use inadmissible evidence for its stated non-hearsay purpose, but requiring that such use be limited and redacted to the extent possible and that special precautions be taken to prevent the use of such evidence on the merits of the case). Should either party wish to use the firearm statements or abuse evidence as rebuttal evidence at trial, the party moving for admission must request a bench conference so that the Court may make a ruling outside the presence of the jury.

## Conclusion

For the reasons discussed in this Memorandum Opinion and Order, the Court concludes

that Sierra Shafer's December 12, 2019 statements to investigating agents regarding firearms are testimonial hearsay barred by both Fed. R. Evid. 802 and the Sixth Amendment's Confrontation Clause. Furthermore, the inadmissibility of these statements leads to a finding that evidence of Defendant's possible abuse of Shafer is unfairly prejudicial and must be excluded pursuant to Fed. R. Evid. 403.

As for the admissible mental kill list evidence, the Court will provide the following limiting instructions to the jury:

> *You have heard evidence that Defendant allegedly had a mental kill list. This evidence was admitted for a limited purpose. In considering the evidence of the alleged mental kill list, you may not consider the evidence as proof that Defendant possessed a firearm. This evidence is admissible only to show a possible motive or to explain why the FBI conducted an investigation of Defendant.*

**THEREFORE,** Defendant's motion for reconsideration or, in the alternative for limiting instructions is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE