IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                              20-CR-82 WJ

HASSAN ALQAHTANI,

    Defendant.

**MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29(A)**

COMES NOW, Hassan Alqahtani, by and through his counsel of record, Ahmad Assed & Associates (Ahmad Assed, Richard J. Moran, and Britany J. Schaffer), and the Law Office of Joel R. Meyers LLC (Joel R. Meyers), and hereby respectfully moves this Court for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(a), and as grounds, Mr. Alqahtani submits the following:

**I.    INTRODUCTION**

Hassan Alqahtani was accused by the government of being a prohibited person, specifically a person on a nonimmigrant visa, in unlawful possession of a firearm from July 2019 to December 12, 2019, in violation of 18 U.S.C. § 922(g)(5)(B). As the government has failed to introduce evidence to establish beyond a reasonable doubt all the necessary elements of the offense, Mr. Alqahtani seeks a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a).

## II. STANDARDS FOR RULE 29(A)

Pursuant to Rule 29(a), after the government closes its evidence, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). In ruling on a Rule 29 Motion, the Court must ask whether taking the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000).

The government must prove every element of the charged offense beyond a reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). *See also*, *Sullivan v. Louisiana*, 508 U.S. 275, 277–78 (1993) ("The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements.") (citations omitted).

Further, "[t]he evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt." *McKissick*, 204 F.3d at 1289. "[I]t is a bedrock promise of our criminal justice system that the evidence supporting a conviction 'must raise more than the mere suspicion of guilt, and the jury's inferences must be more than speculation and conjecture in order to be reasonable.'" *United States v. Lovern*, 590 F.3d 1095, 1109 (10th Cir. 2009).

Additionally, when the government asks the jury to find an element of the crime through inference, the jury may not be permitted to conjecture or to conclude upon pure speculation or from passion, prejudice or sympathy; instead, the court must be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt. *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir.

2016). "[W]here the government's evidence is equally strong to infer innocence of the crime charged as it is to infer guilt, the verdict must be one of not guilty and the court has a duty to direct an acquittal." *United States v. Kelton*, 446 F.2d 669, 671 (8th Cir. 1971). Also, a finding of guilt cannot be obtained by piling inference upon inference. *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998).

### III. THE EVIDENCE IN THE PRESENT CASE

In the present case, the Indictment charges that Mr. Alqahtani, "knowing that he was an alien admitted to the United States on a nonimmigrant visa, knowingly possessed a firearm and ammunition in and affecting commerce" in violation of 18 U.S.C. §§ 922(g)(5)(B) and 924. Viewing the evidence admitted at trial for the truth of the matter asserted in the light most favorable to the government reveals the following:

An anonymous FBI tip was made in August 2019 alleging that Hassan Alqahtani possessed a firearm. During the investigation by Special Agent John Labuhn, an additional tipster was discovered, who reported that he had observed a firearm on an unspecified date in July 2019, inside Mr. Alqahtani's residence. The first alleged tipster did not testify during the trial. The second tipster, Anthony Menicucci, testified at trial, but was so inconsistent and illogical as to every detail of the case that he lacked every last ounce of credibility he could possibly be afforded. As such, his testimony must be discounted.

Special Agent Labuhn also testified at trial that he completed training and began his role as a Special Agent with the FBI in August 2019. He testified that he had received the tip, investigated the case by speaking to unspecified witnesses as well as to Anthony Menicucci about the case. Despite testifying as to the many background checks and vetting processes he had conducted on the two tipsters, he did not take into account the personal relationship the two

3

tipsters had with Mr. Alqahtani, nor did this vetting establish either witness's credibility or reliability. Likewise, he failed to discover through his investigation that Mr. Alqahtani had been married for around three years to an American citizen, whose constitutional right to bear arms remained entirely intact. Mr. Alqahtani and his wife lived in the same residence where the gun was located, and the gun was located in the bedroom where Ms. Alqahtani was exiting when the search warrant was executed. Agent Labuhn testified that Ms. Alqahtani and Mr. Alqahtani's family were all within the residence when the search warrant was executed, but Mr. Alqahtani was not present. He could not specify the exact time of the 6:00 a.m. authorized search warrant, but was certain the warrant was executed properly.

Special Agent Labuhn also testified that he worked with Anthony Menicucci to attempt to compel Mr. Alqahtani to purchase a firearm; however, no such purchase ever took place. Instead, Mr. Alqahtani declined to purchase a firearm during the single recorded conversation between himself and Mr. Menicucci.

The United States also brought forth the testimony of a DNA expert, Jerrilyn Conway. Ms. Conway testified that there were four specimens of DNA that were retrieved from the firearm that was seized from Mr. and Ms. Alqahtani's residence. She testified that the first sample correlating to Mr. Alqahtani made up 55% of the DNA detected on the firearm, the second sample correlating to Ms. Alqahtani made up 22% of the DNA on the firearm, and there were two unknown sources of DNA which made up the remainder of the DNA detected on the firearm. She also testified that the secondary transferal of DNA can occur from one person to another object, or from one object to another. She further testified that she could not conclude whether the DNA on a specimen originated from primary or secondary transferal. Nor could she conclude when or how DNA transferred to the firearm in question. Finally, Ms. Conway testified

that the presence of male DNA in a mixture may limit the ability to determine if female DNA is also present in that mixture.

Next, the expert testimony of Sabrina Tishko was elicited by the United States for the purposes of latent fingerprint analysis. Ms. Tishko testified that she located a single fingerprint that was suitable for comparison on the firearm in question. She also testified that other friction ridges were detected that could not be positively attributed to Mr. Alqahtani, Ms. Alqahtani, or any other potential source that was not submitted for comparison. She testified that her analysis could not show the manner or time in which the single left thumb print on the right side of the slide of the firearm occurred.

Special Agent Tyler Coker next testified that although Mr. Alqahtani's application for Permanent Residence was initially denied in May 2018, his application remained pending at the time that the search warrant was executed. He further testified that he located the firearm in a closet in the back southwest bedroom of the residence where the search warrant was executed, where there was a mixture of men's and women's clothing. While he testified that the firearm was located under what he believed to be mostly men's clothing, he was not aware of the organizational structure within the closet of mixed clothing. He also testified that Mr. Alqahtani was not present when the search warrant was executed and only arrived later after the search. He also testified that no other evidence was located in the vehicle that was searched.

As more fully set forth below, even viewing the evidence at trial in the light most favorable to the government, the government has failed to prove the required elements of the offense beyond a reasonable doubt.

## IV. ARGUMENT

### A. The evidence fails to prove beyond a reasonable doubt that Mr. Alqahtani had actual possession of the charged firearm during the time period set forth in the Indictment.

"To prove that a defendant knowingly possessed a firearm, the government must 'prove that the defendant consciously possessed what he knew to be a firearm.'" *United States v. Benamor*, 937 F.3d 1182, 1186 (9th Cir. 2019). To prove actual possession, the government is required to show that the defendant held the charged firearm during the time period specified in the indictment. *United States v. Samora*, 954 F.3d 1286, 1292 (10th Cir. 2020).

In *Samora*, the defendant, a convicted felon, had borrowed his ex-girlfriend's car to go to a restaurant. As he was leaving the restaurant, officers converged to arrest him on an outstanding warrant. He was arrested after a foot chase. The vehicle was searched and a loaded firearm was found in the center console. Testing showed that the firearm contained DNA from at least 3 individuals, but defendant contributed the most DNA to the firearm. At trial, based on the DNA evidence, the government's expert concluded that the defendant likely handled the gun at some point. Defendant was convicted of being a felon in possession of a firearm and appealed. *Id.* at 1289, 1291.

On appeal, the Tenth Circuit agreed with defendant that the trial court erred by failing to instruct the jury on the intent element for constructive possession. The government argued that defendant's conviction should be affirmed because the jury was properly instructed on actual possession and the government had proved actual possession through the DNA evidence. The Court rejected this argument, finding that the DNA evidence only established that the defendant handled the firearm at some point in time and that was not enough. "In this case, the Government presented DNA evidence tending to show Defendant handled the firearm at some point, but the

6

DNA evidence did not establish that Defendant handled the firearm on or about [the date specified in the indictment]." *Id.* at 1295. *See also United States v. Simpson*, 845 F.3d 1039, 1062 (10th Cir. 2017) (admission by defendant, a convicted felon, that he had handled the guns while showing his wife how to shoot did not support conviction for being felon in actual possession of firearm as jury could have concluded that defendant handled the guns at a time other than time period set forth in indictment).

Here, the government cannot establish that Mr. Alqahtani actually possessed the firearm. The one witness who testified as to Mr. Alqahtani's possession could not commit to the correct season nonetheless date that the incident occurred, and lacked all credibility such that his testimony cannot be properly considered as competent testimony. The only other instance of alleged possession presented at trial was the execution of the search warrant of the shared residence of Mr. and Ms. Alqahtani, when Mr. Alqahtani was not present. Like *Samora*, the scientific evidence only establishing that Mr. Alqahtani came into contact with the firearm is insufficient to prove beyond a reasonable doubt that Mr. Alqahtani possessed the firearm identified in the indictment. As such, the Court must enter a judgment of acquittal.

**B.      The evidence fails to prove beyond a reasonable doubt that Mr. Alqahtani had constructive possession of the charged firearm during the time period set forth in the Indictment.**

Possession can also be constructive. The government must prove several items to establish constructive possession. Constructive possession requires proof that the defendant held the power and ability to exercise dominion and control over the charged firearm. *United States v. Benford*, 875 F.3d 1007, 1015 (10th Cir. 2017). The defendant must knowingly hold the power and ability to exercise dominion and control. *Id*. Because the possession must be knowing, a defendant's mere presence in the area of the firearm or awareness of its location is not sufficient

7

to establish possession. *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009) (citation omitted). *See also United States. v. Garner*, 396 F.3d 438, 443 (D.C. Cir. 2005) (because the dominion and control must be knowing, mere proximity or accessibility to contraband is not enough and there must be testimony connecting the defendant with the incriminating circumstances) (citations omitted).

When a defendant has exclusive possession of the premises on which a firearm is found, a jury may in most cases infer that a defendant has knowledge, dominion, and control of a firearm based on that exclusive possession alone. *Benford*, 875 F.3d at 1015. When, however, the premises where the charged firearm was found are jointly occupied, the government must prove more.

> When a person is the sole occupant of a room and has the right to exclude all others from it, it may logically be inferred that he has knowing dominion and control over objects so situated in his room that he is likely to be aware of their presence. But the situation is different where two persons share the occupancy of a room and the right to exclude others from it. Depending on the circumstances, either or both may have knowing dominion and control over a particular chattel, and choice between these alternatives must be based on more than speculation.

*United States v. Griffin*, 684 F.3d 691, 697 (7th Cir. 2012) (citation omitted).

Therefore, when the charged firearm may be attributed to more than one person because of case of joint occupancy of a premises, the government must also show some nexus, link, or other connection between the defendant and the firearm beyond mere co-occupancy of the premises. *United States v. Roach*, 582 F.3d 1192, 1205 (10th Cir. 2009).

In addition to the above, the government must also prove intent. The government must show not only that the defendant had the power to exercise dominion and control, but also had the intent to exercise dominion and control. *Henderson v. United States*, 575 U.S. 622 (2015); *Samora*, 954 F.3d at 1292; *Simpson*, 845 F.3d at 1060.

Intent cannot be inferred based on ease of access. *Griffin*, 684 F.3d at 697. In *Griffin*, the defendant Griffin, after serving a sentence for a felony conviction, moved in with his parents. His conditions of release, like § 922(g), prohibited him from possessing firearms. Soon after Griffin's release, a SWAT team executed a search warrant on the Griffin home, looking for Griffin's brother Chauncey. The police did not find Chauncey, but did find ten firearms, including several shotguns, and five sets of ammunition. Griffin was charged with being a felon in possession of a firearm in violation of § 922(g)(1). At trial a man named Walker, who was in jail with Griffin while the possession charge was pending, testified that Griffin told him that Griffin's father had purchased some of the shotguns for Griffin. Griffin was convicted of being in possession of a shotgun located behind a door in the kitchen that led to the second floor, and of two sets of ammunition found on the stairs between the first and second floor. *Griffin*, 684 F.3d at 694.

Griffin appealed, arguing that the evidence was insufficient to support the jury's conclusion that he possessed the shotgun found behind the kitchen door. The Court agreed and reversed. In reversing, the Court rejected the prosecution's argument that intent could be found based on Griffin's knowledge that the shotgun was there, that the shotgun was easily accessible, and that he failed to separate himself from the firearm. The Court rejected this argument because:

> It confuses access with possession. Neither the felon-in-possession statute nor the terms of Griffin's conditional release prohibited him from living in a home where firearms were otherwise lawfully present. Both prohibit only *his* possession of firearms and ammunition. We recognize that Griffin's easy access to the weapons may have meant that, sitting in the kitchen, he was capable of violating the felon-in-possession statute in a matter of seconds. Without more, however, that easy access does not mean that he actually violated the felon-in-possession statute by intending to exercise control over any of the firearms. "A jury cannot speculate its way out of reasonable doubt."

9

*Id*. at 698-99 (emphasized in original) (citation omitted). *Cf. Samora*, 954 F.3d at 1293 (where defendant, a convicted felon, had fled from car he shared with girlfriend, and a loaded firearm was found in center console of car, and defendant's DNA was found on firearm, jury would not have been compelled to conclude that defendant had intent to exercise control over the firearm to support finding of constructive possession); and *Benford*, 875 F.3d at 1018 (where, after search of apartment defendant shared with girlfriend uncovered firearm in master bedroom, defendant had stated "I'll guess I'll have to take the charge," and defendant had brandished a firearm 19 days before the charged offense, and three months before, defendant had sent a text implying that he would trade firearms for a motor, conviction for possession was reversed and remanded as, based on this evidence, jury would not be compelled to find that defendant intended to exercise control over the firearm).

In this case, the government failed to establish beyond a reasonable doubt that Mr. Alqahtani had constructive possession of the firearm. Ms. Alqahtani is a United States citizen who maintains her full Second Amendment rights to possess a firearm, which cannot be impeded by exercising her fundamental right to marry the person of her choosing, who may happen to be a prohibited person. The fact that the residence was shared with a non-prohibited person, and there is no instance of possession that the government can prove beyond a reasonable doubt necessarily dictate the entry of a Judgment of Acquittal. Even including Mr. Alqahtani's vague statements regarding firearms in the recorded statement with the discredited witness, the government cannot prove Mr. Alqahtani's possession. *Benford*, 875 F.3d at 1018.

## **CONCLUSION**

The government has failed to prove beyond a reasonable doubt that Mr. Alqahtani possessed the .380 firearm specified in the Indictment between July 2019 and December 2019.

Mr. Alqahtani was not present at the residence he shared with his United States citizen wife when the search warrant was executed. The government's only witness alleging a separate instance of possession was so discredited as to render his entire testimony incompetent.

**WHEREFORE**, Mr. Alqahtani respectfully requests this Court to grant this Motion, and enter a Judgment of Acquittal pursuant to Fed. R. Crim. P. 29(a).

Respectfully Submitted,

/s/ *Britany J. Schaffer*
Ahmad Assed
Britany Schaffer
Ahmad Assed & Associates
818 5th Street
Albuquerque, NM 87102
Phone: (505) 246-8373
Facsimile: (505) 246-2930
ahmad@assedlaw.com

/s/ *Joel R. Meyers*
Joel R. Meyers
Law Office of Joel R. Meyers
1000 Cordova Place, # 930
Santa Fe, New Mexico 87505
Phone: (505) 847-7757
Facsimile: (505) 847-5929
jrm@jrmeyerslaw.com

## *CERTIFICATE OF SERVICE*

  I HEREBY CERTIFY THAT on March 31, 2021, I filed the foregoing electronically through the CM/ECF system which caused electronic service on all parties of record.

        */s/ Britany J. Schaffer*
        Britany J. Schaffer
        Attorney for Hassan Alqahtani